# EXHIBIT 1

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/17/2023 6:15 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Trinh, Deputy Clerk

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| JERRY AVILES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERVET INC., a Delaware corporation d/b/a WWW.HOMEAGAIN.COM,<br><br>Defendant. | Case No. 23STCV28285<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA PENAL CODE SECTION 638.51** |

## I.  INTRODUCTION

To learn the identity of anonymous visitors to www.homeagain.com (the "Website") and monetize its knowledge of those visitor and their online habits, Defendant has secretly deployed spyware that accesses visitor devices, installs tracking software, and surveils their browsing habits.

Plaintiff visited Defendant's website in 2023 using a mobile device.  Without Plaintiff's knowledge or consent, Defendant secretly used "pen register" software to access Plaintiff's device and install tracking software in violation of California law.

## II.  JURISDICTION AND VENUE

1. Defendant is subject to jurisdiction in this state under Penal Code section 502(j), which provides that a person who accesses a computer from another jurisdiction is deemed to have personally accessed the computer in California.  Plaintiff was in California when Defendant accessed Plaintiff's device and installed tracking code.

2. Defendant is also subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of revenues from its website based upon interactions with Californians (including instances in which the website operates as a "gateway" to sales), such that the website "is the equivalent of a physical store in California."  Since this case involves illegal conduct emanating from Defendant's operation of its website targeting Californians, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

3. Venue is proper in this County pursuant to California Code of Civil Procedure section 394(b) because "none of the defendants reside in the state", such that venue is proper "in any county that the plaintiff may designate."

## III.  PARTIES

4. Plaintiff is a resident of California. Plaintiff is also a consumer privacy advocate who works as a "tester" to ensure that companies abide by the privacy obligations imposed by California law.  As an individual who advances important public interests at the risk of vile personal attacks,

- 2 -
CLASS ACTION COMPLAINT

Plaintiff should be "praised rather than vilified." *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006). Indeed, the Ninth Circuit recently made exceptionally clear that it is "necessary and desirable for committed individuals to bring serial litigation" to enforce and advance consumer protection statutes, and that Courts must not make any impermissible credibility or standing inferences against them. *Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

5. Defendant is a division of Merck, one of the largest companies in the United States. It sells pet services throughout California and in this County.

## IV.    FACTUAL ALLEGATIONS

**A.    The Right to Privacy Has Always Been a Legally Protected Interest in the United States.**

6. Since America's founding, privacy has been a legally protected interest at the local, state, and federal levels. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1271–72 (9th Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)) ("Privacy rights have long been regarded 'as providing a basis for a lawsuit in English or American courts.'"); and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Violations of the right to privacy have long been actionable at common law.").

7. More specifically, privacy protections against the disclosure of personal information are embedded in California statutes and at common law. *See e.g.*, *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989) ("The Ninth Circuit has repeatedly held that privacy intrusions may constitute "concrete injury" for purposes of Article III standing); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017) (finding "concrete injury" where plaintiffs claimed that unsolicited telemarketing calls "invade the privacy and disturb the solitude of their recipients*"); In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599 (9th Cir. 2020) (finding "concrete injury" where Facebook allegedly tracked users' "personally identifiable browsing history" on third party websites); *Patel*, 932 F.3d at 1275 (finding "concrete injury" where plaintiffs claimed Facebook's facial-recognition technology violated users' privacy rights).

8. In short, the privacy of personal information is—and has always been—a legally protected interest in many contexts. Thus, a defendant whose acts or practices violate consumer privacy inflicts an actionable "injury" upon an individual.

B.   **Defendant Secretly Installs Tracking Software on the Devices of All Visitors To Its Website In Violation of California Law.**

9. Every device connected to the internet has a unique IP address, typically consisting of a sequence of numbers. *See United States v. Caira*, 833 F.3d 803, 805 (7th Cir. 2016). An IP address "is used to route information between devices." *United States v. Ulbricht*, 858 F.3d 71, 84 (2d Cir. 2017).

10. Once linked to a particular individual, a unique IP address can be used to compile a detailed picture of an individual's online activities, including: the online services for which an individual has registered; personal interests based on websites visited; organizational affiliations; where the individual has been physically; a person's political and religious affiliations; individuals with whom they have leanings and with whom they associate; and where they travel, among other things. *See* https://www.priv.gc.ca/en/opc-actions-and-decisions/research/explore-privacy-research/2013/ip_201305/ (last downloaded November 2023).

11. For the preceding reasons, the ability to link an IP address to a particular individual is of great monetary value and has created an entire industry known as "identity resolution." Identity resolution is generally defined as "the ability to recognize an individual person, in real-time, by connecting various identifiers from their digital interactions across devices and touchpoints." *See* https://www.fullcontact.com/identity-resolution/ (last visited November 2023).

12. The technical means by which an IP address is linked to a particular individual is via deployment of "pen register" software. Traditionally, law enforcement used "pen registers" in investigations to record all numbers called from a particular telephone, and "pen registers" required physical machines. Today, pen registers take the form of software. *See In re Order Authorizing Prospective & Continuous Release of Cell Site Location Recs.*, 31 F.Supp.3d 889, 898 n.46 (S.D. Tex. 2014) (citing Susan Freiwald, *Uncertain Privacy: Communication Attributes After the Digital Telephony Act*, 69 S. Cal. L. Rev. 949, 982-89 (1996) (describing the evolution of the pen register from mechanical device to computer code)).

13. The following graphic shows how a website deploying pen register software to capture the IP address of visitors can identify anonymous website visitors and a great deal of personal information about their lives and habits:



14. In the above example, a "pen register" has been used to capture an anonymous user's IP address and compare it to previously aggregated "touchpoints" to reveal the following details about a website visitor:

    (a) Full name *(Mary Smith)*

    (b) Date of birth *(May 1, 1979)*

    (c) Gender *(female)*

    (d) Home address *(2345 Avenue C, Papillion Nebraska)*

    (e) Marital Status and Family *(Married with two children)*

    (f) E-mail address *(*Mary.Smith@gmail.com*)*

    (g) Personal Cell Phone: *(111) 123-4567*

    (h) Voter Registration Status *(Registered)*

    (i) Interests *(Shopping, Cooking, Traveling, Reading, Science)*

    (j) Employer *(Karen's Fireside, Inc.)*

    (k) Title *(Vice President)*

    (l) Work Hours *(Daily 9-5)*

15. Because of the massive privacy implications, California law prohibits the deployment of pen register software without first obtaining a court order. Cal. Penal Code § 638.51 ("CIPA Section

638.51"). CIPA defines a "pen register" broadly to include "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b). *See Greenley v. Kochava*, 2023 WL 4833466, at *15-*16 (S.D. Cal. July 27, 2023) ("the Court rejects the contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a "pen register."). CIPA imposes civil liability and statutory penalties for the installation of pen register software without a court order. *Id.*

16. Defendant knowingly and intentionally deployed "pen register" software on its website to decode routing, addressing, and signaling information to obtain the IP address of each visitor as part of Defendant's identity resolution efforts in violation of California law. In response to an appropriate request, Plaintiff will share with Defendant proof of the deployment and activity of the pen register.

17. Defendant used the pen register software to access Plaintiff's device and install tracking code on Plaintiff's device in violation of California law. *See Greenley v. Kochava,* 2023 WL 4833466, at *15-*16 (S.D. Cal. July 27, 2023). Defendant did not obtain Plaintiff's knowing and informed consent to do so, nor did Defendant obtain a court order authorizing it to do so.

## V. CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons within the state of California who visited Defendants website within the statute of limitations period and whose privacy was violated as described above.**

19. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be at least 100. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

20. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class.

21. TYPICALITY: As a person who visited Defendant's Website and whose privacy was invaded, Plaintiff is asserting claims that are typical of the Class.

22. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

23. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient.

## VI. CAUSE OF ACTION
## CALIFORNIA INVASION OF PRIVACY ACT
## PENAL CODE SECTION 638.51

24. Section 638.51 of the Penal Code provides that it is illegal to "install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." (Penal Code § 638.51(a).) A "'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. (Penal Code § 638.50(b).)

25. Defendant knowingly and criminally deployed pen register software to access Plaintiff's device, install tracking software, and obtain Plaintiff's IP address. *See Greenley v. Kochava*, 2023 WL 4833466, at *15-*16 (S.D. Cal. July 27, 2023) (Bashant, J.). Plaintiff did not consent to Defendant's actions.

26. Plaintiff suffered both an economic injury and an intangible injury to Plaintiff's dignity caused by the violation of Plaintiff's right to privacy.

27. By knowingly violating a criminal statute and illegally accessing Plaintiff's device to install tracking software, Defendant acted with oppression and malice. As such, Defendant is liable for punitive damages pursuant to Civil Code section 3294.

28. Plaintiff is also entitled to statutory damages of $5,000. *See* Penal Code § 637.2(a)(1).

29. The class members suffered the same intrusion and are entitled to the same damages as Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.  An order certifying the class and making appropriate case management orders therewith;

b.  For statutory damages, punitive damages, attorneys' fees; and

c.  For any and all other relief at law that may be appropriate.

Dated:  November 17, 2023                    PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff